# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

CLAYTON DALE NICHOLS, )
)
        Plaintiff, )
)
v. )    Case No. CIV-18-161-SPS
)
ANDREW M. SAUL, )
**Commissioner of the Social** )
**Security Administration,**[1] )
)
        Defendant. )

## OPINION AND ORDER

The claimant Clayton Dale Nichols requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was twenty-eight years old at the time of the administrative hearing (Tr. 47, 205). He has a high school education and no past relevant work (Tr. 34, 51, 66). The claimant alleges that he has been unable to work since October 15, 2013, due to cervical dystonia (Tr. 218).

**Procedural History**

In August 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 205-12). His applications were denied. ALJ Michael E. Finnie conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 24, 2017 (Tr. 20-36). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), *i. e.,* he could lift/carry twenty pounds occasionally and ten pounds frequently, and could sit/stand/walk about six hours out of an eight-hour work day, but could have no more than occasional contact with

the general public (Tr. 27). The ALJ then concluded that the claimant was not disabled because there was work he could perform in the national economy, *i. e.*, handworker, line operator, and mail folding machine operator (Tr. 34-36).

**Review**

The claimant contends that the ALJ erred by failing to properly evaluate the opinions of his treating physicians, Dr. Jose Manus and Dr. Bharathy Sundaram. The Court finds the claimant's contention unpersuasive for the following reasons.

The ALJ found that the claimant had the severe impairments of dystonia, spasmodic torticollis, depressive disorder, and anxiety disorder, but that his obesity was nonsevere (Tr. 23). The relevant medical records reveal that the claimant's primary care provider treated him for spasmodic torticollis in January 2014 and for dystonia in April 2014 and June 2014 (Tr. 322-25). January 2014 CT scans of the claimant's brain and cervical spine were normal apart from narrowing of the C5-6 disc space (Tr. 346-47). A June 2014 MRI of the claimant's brain revealed presumed silent sinus syndrome but was otherwise normal (Tr. 394-96).

The claimant established care at Texas Institute for Neurological Disorders on March 5, 2014 for involuntary twitching and jerking of his head and Dr. Matus diagnosed him with other acquired torsion dystonia (Tr. 390-91). The claimant next presented to Dr. Sundaram at Texas Institute for Neurological Disorders on June 17, 2014 and reported some improvement with medication but continued discomfort (Tr. 386). Dr. Sundaram found diminished range of motion in the claimant's cervical spine to the left, normal tone and strength in his extremities except for hypertrophy of the left sternocleidomastoid

muscle and right trapezius, a normal gait, and no evidence of coordination or balance problems (Tr. 388). She noted the claimant had a tilt and contraction of his head turned to the right with some spread of dystonia to his right upper arm and abdominal muscles (Tr. 388). She diagnosed the claimant with cervical dystonia, other acquired torsion dystonia, and segmental dystonia (Tr. 388-89). Dr. Sundaram regularly administered Botox injections through March 2017, but by January 2016 the Botox injections had provided complete relief of the claimant's cervical dystonia, although his truncal contractions persisted (Tr. 357-82, 431-42, 434-36, 474-502).

In March 2017, Dr. Matus and Dr. Sundaram completed nearly identical physical RFC assessments as well as forms regarding absences from work, unskilled work requirements, and a clinical assessment of pain (Tr. 455-72). In these forms, the doctors indicated, *inter alia*, that the claimant could sit/stand for fifteen minutes; rarely lift ten pounds, twist, or stoop; could never look up or down, turn his head right or left, hold his head in a static position, crouch, or climb ladders or stairs; had significant limitations with reaching, handling, or fingering; and would be absent from work more than four days per month (Tr. 460-61, 470-71). As to the claimant's pain, they indicated that basic physical work activities would increase the claimant's pain and reduce his ability to perform physical and mental work activities to such a degree as to cause inadequate functioning or total abandonment of tasks (Tr. 456, 465). As to unskilled work requirements, Dr. Matus and Dr. Sundaram indicated that the claimant could not maintain concentration and attention for extended periods, handle normal work stress, or attend any employment on a sustained basis (Tr. 457, 466). They stated that the limitations they found had been

applicable since they each began treating the claimant in March 2014 and June 2014 (Tr. 463, 472). Additionally, Dr. Matus completed a form regarding sedentary work requirements wherein he found, *inter alia*, that the claimant could not stand/walk up to two hours in an eight-hour workday, sit up to six hours, use both hands for fine manipulation, or maintain his head in a flexed downward position for extended periods due to cervical spasmodic torticollis and dystonia on his trunk and upper extremities (Tr. 458).

Dr. Matthew Feist performed a consultative physical examination of the claimant on October 21, 2015 (Tr. 404-10). Dr. Feist recorded no abnormalities apart from elevated blood pressure and concluded that the claimant had no physical limitations (Tr. 410).

On October 26, 2015, state agency physician Dr. Luther Woodcock completed a physical RFC assessment and found the claimant could perform the full range of light work (Tr. 85-86). His findings were affirmed on review (Tr. 107-09).

At the administrative hearing, the claimant testified that he was unable to work due to movement in his neck and trunk area (Tr. 51). He further testified that the Botox injections worked well for his neck but wore off after approximately three or four weeks, and that they minimally helped his back, but did not help his stomach since he did not receive injections in his stomach (Tr. 51-52). He stated that his back contracts "quite frequently" and the contractions are somewhat relieved by sitting down and leaning forward but that he spends most of his day lying down (Tr. 52). As to his pain, the claimant testified that his medications reduce his pain for about three hours and that he uses a pain stimulator three or four times per week (Tr. 53-55). As to specific limitations, the claimant stated that he could lift his eight-month-old child, stand for three hours, and sit for two and

one-half or three hours, but could not occasionally lift and carry twenty pounds, or stand and walk for six hours (Tr. 58, 63-64).

In his written opinion, the ALJ summarized the claimant's hearing testimony and the medical record. In discussing the opinion evidence, the ALJ gave significant weight to the state agency physicians' opinions because their opinions were supported by the record, showing the claimant derived some benefit from neurological treatment and could perform light work despite some abnormalities on physical examination (Tr. 30). The ALJ gave only some weight to Dr. Feist's consultative opinion because it was based on a single evaluation and the neurological treatment notes reflected more significant symptoms (Tr. 30). He then assigned little weight to the opinions of Dr. Matus and Dr. Sundaram in light of the following: (i) the conservative medication management of depression and anxiety; (ii) their own unremarkable cognitive functioning findings; (iii) the claimant's testimony as to his ability to handle stress, adapt to changes in routine, and pay attention; (iv) their own normal findings as to the claimant's gait and extremities; and (v) the claimant's activities of daily living (Tr. 31-32).

Medical opinions of a treating physician such as Dr. Matus and Dr. Sundaram are entitled to controlling weight if "'well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927.

*Id*. The factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ rejects a treating physician's opinion entirely, he must "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ's treatment of the opinions of Dr. Matus and Dr. Sundaram, as described above, meets these standards. The ALJ specifically addressed their findings, considered each opinion in turn, and gave numerous reasons, supported by the record, for adopting or not adopting the limitations described in them. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted]. Accordingly, he did not commit error in failing to include further limitations for the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

**Conclusion**

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 12th day of September, 2019.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**